IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| NNAMDI EGBUKICHI and ELIZABETH EGBUKICHI, | Case No. 3:15-cv-02033-SI |
| Plaintiffs, | **OPINION AND ORDER** |
| v. | |
| **WELLS FARGO BANK, NA**, | |
| Defendant. | |

Keith D. Karnes, KARNES LAW OFFICES, 1860 Hawthorne Avenue Northeast, Suite 10, Salem, Oregon, 97301. Of Attorneys for Plaintiffs.

Philip S. Van Der Weele and Adam W. Holbrook, K&L GATES LLP, One Southwest Columbia Street, Suite 1900, Portland, Oregon, 97258. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Plaintiffs Nnamdi Egbukichi and Elizabeth Egbukichi ("Plaintiffs") bring suit against

Wells Fargo Bank, NA ("Defendant") for alleged violations of the Oregon Unlawful Trade

Practices Act ("UTPA"), Or. Rev. Stat. ("O.R.S.") § 646.607 *et seq.*, the Equal Credit

Opportunity Act, 15 U.S.C. § 1691 *et seq.*, ("ECOA"), and the Fair Housing Act, 42 U.S.C.

§ 3601 *et seq.*, ("FHA"). Plaintiffs argue that they qualified for a modification of their loan with

Defendant under the Home Affordable Modification Program ("HAMP").[1] Plaintiffs allege that Defendant unlawfully discriminated against Plaintiffs when Defendant, on several occasions, refused to modify Plaintiffs' loan under HAMP. Plaintiffs seek compensatory damages, punitive damages, and attorney's fees. Defendant moves to dismiss the complaint for failure to state a claim. For the reasons stated below, the Court grants Defendant's motion to dismiss with leave to replead.

**STANDARDS**

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012); *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the

---

[1] HAMP is a federally initiated loan modification program through the United States Department of Housing and Urban Development designed to lower monthly payments for people who obtained a loan before January 1, 2009 and cannot make current monthly payments due to financial hardship. *Home Affordable Modification Program (HAMP)*, MAKING HOME AFFORDABLE, https://www.makinghomeaffordable.gov/steps/Pages/step-2-program-hamp.aspx (last visited Mar. 28, 2016).

plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

## BACKGROUND

Plaintiffs, husband and wife, are of African descent and owners of real property ("the Property") that served as collateral for the loan that is the subject of this lawsuit. On June 25, 2008, Plaintiffs purchased the Property. To finance their purchase, Plaintiffs borrowed $393,820 from Northwest Mortgage Group, Inc., signed a promissory note ("the Note"), and executed a trust deed to guarantee repayment. By January 2010, Plaintiffs were in default on the Note and Defendant had been assigned rights to service the Note. On or about February 26, 2010, Plaintiffs requested that Defendant modify Plaintiffs' obligations on the Note. On April 7, 2010, Defendant offered to modify Plaintiffs' obligations on certain specified terms. In September 2010, Defendant was assigned Plaintiffs' Deed of Trust and employed Northwest Trustee Services, Inc. to conduct a non-judicial foreclosure on Plaintiffs' interest in the Property.

On or about October 25, 2010, Plaintiffs requested a HAMP modification from Defendant. Defendant denied the request on November 29, 2010, but offered Plaintiffs a forbearance agreement on certain specified terms. On or about March 30, 2011, and June 20, 2011, Plaintiffs made additional requests for a HAMP modification of their loan. Defendant denied both requests. In denying Plaintiffs' HAMP modification request, Defendant explained

that based upon the documentation provided by Plaintiffs, Defendant could not create an affordable mortgage payment that met the requirements of the HAMP program.

In November 2011, Defendant filed a judicial foreclosure action against Plaintiffs' interest in the Property. In April 2014, Defendant voluntary dismissed that action. In 2015, Defendant threatened to bring a non-judicial foreclosure against Plaintiffs and began the mediation process that is required under Oregon's foreclosure laws. During mediation, Plaintiffs again requested and were again denied a HAMP modification.

Plaintiffs allege that at all relevant times they were qualified for a HAMP modification on their loan, and that Defendant's own employee admitted that Plaintiffs were qualified for a HAMP modification. Plaintiffs further allege that Defendant discriminated against Plaintiffs by denying their HAMP modification and by refusing to consider all of Plaintiffs' income when evaluating the HAMP modification requests. Plaintiffs also allege that Defendant has improperly billed Plaintiffs for fees and costs for the various foreclosure actions that were begun but not completed.

## DISCUSSION

### A. The Oregon UTPA Claims

Defendant moves to dismiss Plaintiffs' UTPA claims, arguing that: (1) the UTPA does not apply to Plaintiffs' loan because the UTPA does not apply to loans made before 2010; (2) Plaintiffs' claim is barred by the UTPA's one-year statute of limitations; and (3) Plaintiffs have not pled any ascertainable loss, which is required for a private lawsuit for damages brought under the UTPA. Plaintiffs respond that: (1) the UTPA applies because all of Defendant's alleged misconduct occurred after the 2010 UTPA Amendment; (2) the statute of limitations does not apply because Plaintiffs were not aware of the fees and costs; and (3) Plaintiffs have properly pled ascertainable loss.

### 1.  Whether the UTPA Applies to Plaintiffs' Claim

Under Oregon's UTPA, "a person engages in an unlawful practice if in the course of the

persons business . . . the person . . . engages in any other unfair or deceptive conduct in trade or

commerce." O.R.S. § 646.608(1)(u). Oregon's administrative rules explain that a "mortgage loan

servicer engages in unfair or deceptive conduct in trade or commerce if the mortgage loan

servicer . . . fails to deal with a borrower in good faith." Or. Admin. R. ("OAR") 137-020-

0805(6).

Defendant relies on cases that have found that in Oregon, the UTPA does not apply to

extensions of credit made before the 2010 statutory amendment. *Mikityuk v. Nw. Tr. Servs., Inc.*,

952 F. Supp. 2d 958, 962 (D. Or. 2013) (holding that the UTPA statutory amendment in 2010

would not permit plaintiff to bring a wrongful foreclosure claim in 2013 for a loan originating in

2003) (citing O.R.S. § 646.605(6), as amended by Or. Laws. Spec. Sess. Ch. 94 § 1 (2010));

*Roisland v. Flagstar Bank, FSB*, 989 F. Supp. 2d 1095, 1108 (D. Or. 2013) (citing *Lamm v.*

*Amfac Mortg. Corp.*, 44 Or. App. 203, 204 (1980) (holding that when a claim arises from a loan

and deed of trust granted before 2010, a claim on the loan or extension of credit cannot be

supported under the Oregon UTPA). In *Roisland*, the plaintiff signed a deed of trust on the

property to secure her loan in 2009. By 2011, the plaintiff was in default on the loan payments

and the property was nonjudicially foreclosed in 2012. The plaintiff in *Roisland* alleged that the

foreclosure proceedings were improper and sought to unwind the subsequent trustee sale. Her

claims involved a variety of allegations, including false information in the deed of trust,

improper fees and costs, and confusion related to the parties' relationship. In dismissing the case,

U.S. District Judge Mosman explained:

> it is unclear exactly what acts of Defendants are at issue in these
> allegations . . . . However sparse the factual allegations, at least
> this much is clear: [plaintiff's] UTPA claim arises from the loan

she received and the deed of trust she granted in 2009. [Plaintiff] consequently cannot support a claim challenging the enforcement of the deed of trust under the UTPA.

*Id.* at 1107-08. Consequently, the court in *Roisland* dismissed plaintiff's UTPA claim. *Id.* at 1108.

Plaintiffs here respond by arguing that because the negotiations for their requested loan modification took place after the 2010 UTPA amendment, even for a loan that originated before 2010, the UTPA amendment applies with respect to allegations involving unlawful practices relating to the loan modification process that occurred after the effective date of the amendment. Plaintiffs primarily rely on *Rubic v. Wells Fargo, N.A.*, 2015 WL 632235 (D. Or. Feb. 13, 2015). In *Rubic*, the plaintiff alleged violations of Oregon's UTPA despite his loan originating in 2009, because he engaged in loan modification negotiations after the effective date of the 2010 statutory amendment. *Id.* at *2. In that case, Judge Mosman adopted the Findings and Recommendation of U.S. Magistrate Judge Acosta and found that a claim under Oregon's UTPA that "arises out of loan modification negotiations that occurred after March 23, 2010, [] is not foreclosed as a matter of law." *Id.* at *1. Judge Mosman distinguished his earlier opinion in *Roisland* on the grounds that Oregon's 2010 UTPA amendment expanded UTPA coverage to both loans and "extensions of credit," and after analyzing the text and legislative history of the amendment, Judge Mosman found that the Oregon Supreme Court would likely conclude that loan modifications constituted "extensions of credit" for purposes of Oregon's UTPA. *Id.* at *2-6.

The plaintiff and defendant bank in *Rubic*, like Plaintiffs and Defendant here, had not finalized any loan modification. Judge Acosta's Findings and Recommendation, adopted by Judge Mosman, analyzed whether "a UTPA claim can arise out of contract negotiations where no contract is ultimately finalized." *Rubic v. Wells Fargo, N.A.*, 2014 WL 7877291, at *6 (D. Or.

Nov. 24, 2014). Judge Acosta analogized that if "a violator unlawfully misrepresents to a potential customer that the customer has credit to borrow funds, but no such credit is available, the violator has committed the unlawful trade practice without an accompanying contract." *Id.* Both Judge Mosman and Judge Acosta concluded that the plaintiff's claims should not be dismissed under the 2010 UTPA amendment because they arose out of the defendant bank's allegedly improper conduct that occurred during negotiations in 2011-13 on the loan modification request.

The Court is persuaded by Judge Mosman and Judge Acosta's reasoning in *Rubic*, and finds that this case is more analogous to *Rubic* than *Roisland*. Here, Plaintiffs and Defendant did not enter into a binding agreement after 2010, but did negotiate loan modifications and forbearance agreements after the effective date of the 2010 statutory amendment, like the plaintiffs in *Rubic*. Plaintiffs do not allege violations of Oregon's UTPA relating to Plaintiffs' original loan, but allege violations of the UTPA relating to Defendant's conduct in negotiating and denying loan modifications. Accordingly, the Court finds that Plaintiffs' claims are cognizable under the 2010 UTPA statutory amendment because the alleged wrongful conduct occurred during the loan modification and forbearance negotiations in 2010, 2011, and 2015, after the UTPA amendment took affect. H.B. 3706, 1st Sp. Sess. (Or. 2010) (the 2010 amendment became effective on March 23, 2010).

### 2. Oregon UTPA Statute of Limitations

Defendant also moves to dismiss Plaintiffs' claims relating to the 2010 and 2011 loan modification denials and the fees and costs billed by Defendant as time-barred under Oregon's UTPA one year statute of limitations. Plaintiffs do not dispute that their claims arising out of the alleged loan modification denials from 2010 and 2011 are time barred. Accordingly, the Court grants Defendant's motion with respect to Plaintiffs' UTPA claims arising out of those denials.

Relating to their claims of improper fees and costs being charged, Plaintiffs respond that the statute of limitations does not apply based on the "discovery rule." This argument is unavailing because Plaintiffs did not allege facts sufficient to support application of the discovery rule.

Plaintiffs vaguely argue in their response brief that the discovery rule applies to Plaintiffs' claim of a UTPA violation for improperly charging foreclosure fees and costs. Plaintiffs did not, however, allege in their Complaint that the discovery rule applies. Nor did Plaintiffs allege facts supporting application of the discovery rule to their claim that Defendant improperly charged foreclosure fees and costs. Plaintiffs allege that Defendant started and withdrew two different foreclosure proceedings: (1) a non-judicial foreclosure that was commenced on or about September 23, 2010; and (2) a judicial foreclosure that was filed on November 17, 2011 and dismissed on April 22, 2014 (based on Defendant's motion to withdraw filed on April 16, 2014). Plaintiffs do not allege whether the allegedly improper fees were charged for one or both of these foreclosures. Plaintiffs also do not allege when they learned of the fees and costs associated with the attempted foreclosure. The only specific allegation is that "[Defendant's] conduct in charging the Plaintiffs for fees and costs for foreclosure actions upon which [Defendant] did not prevail" violates Oregon's UTPA.

Plaintiffs filed their Complaint on October 29, 2015. Thus, the one-year statute of limitations precludes any UTPA claim accruing on or before October 29, 2014. Both foreclosure actions were terminated well before the one-year statute of limitations period, and Plaintiffs fail to plead any facts showing that they were charged the allegedly improper fees and costs after October 29, 2014, or that they reasonably could not have known about the allegedly improper fees and costs until after October 29, 2014. Accordingly, the Court finds that the facts alleged do not support application of the discovery rule.

PAGE 8 – OPINION AND ORDER

### 3. Oregon UTPA Ascertainable Loss

Defendants next argue that Plaintiffs' UTPA claims should be dismissed because they do not allege any ascertainable loss. Pleading an ascertainable loss of money or property is an essential element of a private UTPA claim. *Creditors Protective Ass'n, Inc. v. Britt*, 58 Or. App. 230, 233 (1982) (noting that "a plaintiff must plead and prove an ascertainable loss of money or property").

Plaintiffs do not allege that they paid the allegedly improper fees and costs. Thus, even if their UTPA claim based on Defendant's charging of those fees and costs was not time barred, Plaintiffs fail to allege an ascertainable loss with respect to the allegedly improper fees and costs. *See Paul v. Providence Health Sys.-Oregon*, 237 Or. App. 584, 603-04 (2010) (explaining that a threatened loss is not an ascertainable loss under Oregon's UTPA); *see Gomez v. Bank of America*, N.A., 2012 WL 929790, at *9 (D. Or. Mar. 19, 2012) (finding that the fact that the plaintiffs were in default on their loan did not, in itself, constitute ascertainable loss because they had not lost any money or property); *see also Kaymark v. Bank of America, N.A.*, 783 F.3d 168, 181 n.5 (3rd Cir. 2015) (holding that because the plaintiff had not paid the disputed fees, she did not have an ascertainable loss).

Regarding Plaintiffs timely UTPA claim based on the allegedly improper denial of Plaintiffs' 2015 request for a HAMP modification, Plaintiffs argue that they suffered the "ascertainable loss" of costs for preparing the HAMP modification request, getting to the mediation, or attending the mediation. Plaintiffs did not allege these losses in their Complaint. Even if they had, however, these costs still might not be ascertainable losses arising out of Defendant's allegedly wrongful denial of Plaintiffs' HAMP request made at the mediation. Thus, Plaintiffs' UTPA claim based on Defendant's denial of Plaintiffs' HAMP request made at the mediation is dismissed with leave to replead.

**B.  The ECOA Claims**

Under the ECOA, "[i]t shall be unlawful for any creditor to discriminate against any applicant, with respect to any aspect of a credit transaction . . . *on the basis of* race . . . ." 15 U.S.C. § 1691(a)(1) (emphasis added). Defendant moves to dismiss Plaintiffs' ECOA claims because (1) Plaintiffs failed to identify the specific protected class underlying the dispute; and (2) Plaintiffs failed to allege that Plaintiffs were discriminated against "on the basis" of a protected ground. Plaintiffs respond that they have properly alleged all the elements of an ECOA claim as required by courts, namely that they have alleged that (1) they are members of a protected class as African Americans; (2) they applied for the HAMP loan modification in 2010, 2011, and 2015; (3) they were qualified for the HAMP loan modification; and (4) Defendant denied the HAMP loan modification on each occasion despite Plaintiffs' qualification. Plaintiffs rely on *Mich. Prot. & Advocacy Serv., Inc. v. Babin*, 18 F.3d 337, 346 (6th Cir. 1994), to support their argument.

*Babin*, however, does not support Plaintiffs' argument that they have sufficiently alleged an ECOA claim. First, *Babin* did not involve ECOA, but the Fair Housing Amendments Act. Further, the elements recited by the Sixth Circuit were that the plaintiffs must plead that (1) they were members of a protected class; (2) they attempted to engage in a "real estate-related transaction" with the defendants and met all relevant qualifications; (3) the defendants refused to engage in that type of transactions with the plaintiffs despite their qualifications; and (4) the defendants continued to engage in that type of transaction with other parties with similar qualifications. *Id*. at 346. Here, even if this pleading standard was applicable, Plaintiffs do not plead the fourth element.

In its reply brief, Defendant acknowledges that a number of courts, including this Court, have recited the four elements Plaintiffs posit as the pleading requirements for an ECOA claim.

PAGE 10 – OPINION AND ORDER

Defendant argues, however, that these cases primarily rely on a district court case, *Hafiz v. Greenpoint Mortg. Funding, Inc.*, 652 F. Supp. 2d 1039, 1045 (N. D. Cal. 2009), which erroneously relied on and cited to cases describing the elements of a *prima facie* case at summary judgment and not requirements at the pleading stage. *See, e.g.*, *Blair v. Bank of Am., N.A.*, 2012 WL 860411, *13 (D. Or. Mar. 13, 2012)[2]; *Mashburn v. Wells Fargo Bank, NA*, 2011 WL 2940363, at *5 (W.D. Wash July 19, 2011); *Sakugawa v. IndyMac Bank, F.S.B.*, 2010 WL 4909574, at *4 (D. Haw. Nov. 24, 2010); *Small v. Mortg. Elec. Registration Sys., Inc.*, 2010 WL 3719314, at *10 (E.D. Cal. Sept. 16, 2010). Defendants argue that at the pleading stage the statutory elements must be alleged, and this includes requiring an allegation that the discrimination be "on the basis of" a protected class. The Court has reviewed the cases relied on by both parties, and the cases cited within those cases for the proposition about what elements are required to properly allege an ECOA claim, and the Court agrees with Defendants.

In *Hafiz*, the court noted that the Ninth Circuit has not articulated the standard for ECOA discrimination claims. 652 F. Supp. 2d at 1045. Because the *Hafiz* court did not have Ninth Circuit case law, it looked to other circuits for guidance, relying primarily on *Chiang v. Veneman*, 385 F.3d 256, 259 (3rd Cir. 2004), to establish an ECOA pleading standard. 652 F. Supp. 2d at 1045. The *Hafiz* court then announced the "four element" test for pleading an ECOA claim that has since been widely cited by district courts in this circuit. *Id.* The *Chiang* case, however, was an appeal of a class certification, and specifically held that "to establish a prima

---

[2] In *Blair*, the plaintiff's ECOA claim specifically alleged that he was discriminated against "on the basis of" his disability. First Amended Complaint, Case No. 3:10-cv-00946-SI, Dkt. 64, ¶ 6.12. Notably, the *defendants* in *Blair* cited *Hafiz* for the four required elements of an ECOA claim, and the plaintiff did not dispute those elements. The Court's opinion in *Blair*, which cited those four elements as required at the pleading stage, was affirmed on appeal. *Blair v. Bank of Am., N.A.*, 573 F. App'x 665 (9th Cir. 2014). The elements required to allege an ECOA claim, however, was not raised on appeal.

facie case under ECOA, the class members must show (1) plaintiff was a member of a protected class; (2) plaintiff applied for credit from defendants; (3) plaintiff was qualified for the credit; and (4) despite qualification, plaintiff was denied credit." 385 F.3d at 259. Allegations sufficient to state a claim are not interchangeable with the evidence sufficient to meet the burden of proof of a *prima facie* case. *See Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997) (noting that the *prima facie* case requirement "orchestrates the burdens of proof . . . it does not dictate the required elements of a complaint"); *see also Black's Law Dictionary* 1382 (10th ed. 2014) (defining "prima facie case" as "the establishment of a legally required rebuttable presumption," or "a party's production of enough evidence to allow the fact-trier to infer the fact at issue and rule in the party's favor").

The Ninth Circuit has instructed, in the context of an FHA claim, that pleadings "should be judged by the statutory elements of [a] claim rather than the structure of the prima facie case." *Gilligan*, 108 F.3d at 250. The Third Circuit recently noted that with FHA and ECOA claims, "parties argue about whether the . . . complaint establishes a prima facie case under these statutes, but that is not the focus at the Rule 12(b)(6) stage, as the prima facie case is an evidentiary standard." *Shahin v. PNC B*ank, 625 F. App'x 68, 70 (3rd Cir. 2015). In *Shahin*, the court dismissed the plaintiff's claims because "the complaint does not plausibly indicate that [the defendant] declined to provide the loan for any discriminatory reason." *Id.* at 70-71.

The FHA, similar to the ECOA, requires that the challenged housing decisions be "because of"[3] a protected status. The pleading requirements for other civil rights discrimination and retaliation statutes also include that the allegedly wrongful conduct was done because of

---

[3] For purposes of this analysis, the Court does not find a material difference between "because of" and "on the basis of" in the context of pleading discrimination. The Court is not addressing any difference that may arise relating to "but for" versus "mixed motive" causation standards.

protected status or conduct, or that persons who are not members of a protected class were treated better than persons who are members of the protected class. *See, e.g.*, *McGary v. City of Portland*, 386 F.3d 1259, 1265 (9th Cir. 2004) (American with Disabilities Act); *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1064 (9th Cir. 2002) (Title VII retaliation); *Jeter v. Hozhoni Found.*, 2013 WL 4431096, at *1 (D. Ariz. Aug. 16, 2013) (Age Discrimination in Employment Act).

The Court finds that the four-element *prima facie* case cited in *Hafiz* is not the appropriate pleading requirement on a motion to dismiss because it does not necessarily require allegations of discrimination "on the basis of race." 15 U.S.C. § 1691(a)(1). The Court finds that to state a claim for violations of ECOA, a plaintiff must allege facts that plausibly suggest: (1) the plaintiff was a member of a protected class; (2) the plaintiff applied for credit from defendants; and (3) the plaintiff was denied credit on the basis of his or her protected class. Facts that might plausibly suggest that the denial of credit was because of or on the basis of an applicant's protected status may include: (1) that the applicant was qualified to receive credit and was denied credit despite being qualified; (2) facts demonstrating discriminatory animus or treatment by the defendant; or (3) that persons not within the protected class were granted extensions of credit by the defendant. But pleading such facts does not replace the requirement that a plaintiff plead that the alleged denial of credit was on the basis of the plaintiff's protected status.

In applying this test to Plaintiffs' Complaint, Plaintiffs fail to allege the third element, that they were denied credit on the basis of their protected class. Plaintiffs allege that they are African American. Dkt. 1, ¶ 5. Thus, they are members of a protected class. Plaintiffs also allege that they were qualified for a HAMP modification and that Defendant discriminated against

Plaintiffs by denying their requests for HAMP modifications and refusing to consider all of their

income, despite Defendant's acknowledgement that Plaintiffs qualified for a modification. *Id.*

¶¶ 21, 29. Plaintiffs do not, however, specifically allege that they were denied HAMP

modification because of or on the basis of their race. This is insufficient to state a claim.[4] Thus,

Plaintiffs' ECOA claim is dismissed with leave to replead.

## C.  The FHA Claims

Plaintiffs argue that Defendant's HAMP modification denials also violate the FHA.

Under the FHA, it is "unlawful for any person or other entity whose business includes engaging

in residential real estate-related transactions to discriminate against any person in making

available such a transaction, or in the terms or conditions of such a transaction, because of

race . . . ." 42 U.S.C. § 3605. Defendant moves to dismiss Plaintiffs' FHA claims because

(1) Plaintiffs' claim is barred by the FHA's two-year statute of limitations; and (2) Plaintiffs

failed to allege that they were discriminated against because of their protected class membership.

### 1.  FHA Statute of Limitations

Plaintiff argues that their claim is not time-barred because Defendant was engaged in a

continuing violation of the FHA by repeatedly discriminating against Plaintiffs by denying

Plaintiffs HAMP requests. Plaintiff concedes that the first two denials occurred before the statute

of limitations, but argues that they are not time-barred because they are part of a "continuing

---

[4] In their response brief, Plaintiffs note that Defendant has entered into a consent decree to refrain from discriminating against Hispanic and African American borrowers and that a Harvard Law professor reported a study of Defendant's lending practices that indicates that Wells Fargo was giving less favorable loan terms to Hispanic and African American borrowers. Although these facts might support Plaintiffs' claims that Defendant denied Plaintiffs' loan modification requests because of their race or at least plausibly show that admissible evidence may be discovered, these facts were not alleged in the Complaint and are not proper to consider on motion under Federal Rule of Procedure 12(b)(6). Moreover, Plaintiffs still need specifically to allege that they were discriminated against on the basis of their race.

violation." This argument is foreclosed by the Supreme Court's decision in *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002).[5]

Before the Supreme Court's 2002 decision in *Morgan*, the Ninth Circuit had recognized two methods by which a plaintiff may establish a continuing violation: (1) showing a serial violation by pointing to a number of related acts against one individual, of which at least one falls within the relevant period of limitations; or (2) showing a systematic pattern or practice of discrimination that operated, in part, within the limitations period. *See Cherosky v. Henderson*, 330 F.3d 1243, 1246 (9th Cir. 2003) ("Prior to *Morgan*, a plaintiff arguably could invoke the continuing violations doctrine by demonstrating either a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the statutory period." (quotation marks omitted)). In *Morgan*, however, the Supreme Court substantially limited the continuing violations doctrine, rejecting its application to so-called "serial violations." Specifically, the Supreme Court held: "discrete discriminatory acts are not actionable if time barred, even when they are related to acts alleged in timely filed charges." *Morgan*, 536 U.S. at 113.

A discrete discriminatory act consists of conduct that "occurred" on the day it "happened." *Id.* at 110. For discrete discriminatory acts, "[e]ach incident of discrimination constitutes a separate actionable unlawful . . . practice.'" *Id.* at 114. Incidents occurring outside

---

[5] "Although *Morgan* involved Title VII of the Civil Rights Act of 1964, the Supreme Court's analysis of the continuing violations doctrine is not limited to Title VII actions. It applies with equal force . . . to actions arising under other civil rights laws." *Cherosky v. Henderson*, 330 F.3d 1243, 1246 n.3 (9th Cir. 2003) (applying *Morgan's* analysis of the continuing violations doctrine to the Rehabilitation Act); *see also Cmty. House, Inc. v. City of Boise*, 490 F.3d 1041, 1048 n. 3 (9th Cir. 2007) (applying *Morgan* to FHA discrimination claims); *Colquitt v. Mfrs. & Traders Tr. Co.*, --- F. Supp. 3d ---, 2015 WL 7221046, at *5 (D. Or. Oct. 9, 2015) (applying *Morgan* to FHA discrimination claims based on alleged discriminatory loan modification denials).

of the limitations period are not actionable, but evidence of those incidents may be admitted as relevant background evidence to support a related timely claim. *Id.* at 113.

When a plaintiff alleges disparate-treatment claims, "it is insufficient merely to allege discrimination as the result of a practice that extends over time and through a series of related acts when the 'practice' remains divisible into a set of discrete acts, each of which is individually actionable." *Colquitt v. Mfrs. & Traders Tr. Co.*, --- F. Supp. 3d ---, 2015 WL 7221046, at *5 (D. Or. Oct. 9, 2015) (citing *Morgan*, 536 U.S. at 113-17). The Ninth Circuit has explained that plaintiffs sometimes confuse "a continuing violation with the continuing effects of a past violation" in the context of FHA claims. *Garcia v. Brockway*, 526 F.3d 456, 462 (9th Cir. 2008). Further, "current effects of a prior discriminatory practice by themselves are insufficient to resuscitate prior acts of discrimination." *Colquitt*, 2015 WL 7221046, at *5.

In *Colquitt*, U.S. District Judge Brown analyzed the application of the continuing violations doctrine to FHA claims alleging repeated improper loan modification denials. *Id.* at *4-6. Judge Brown explained that "it is insufficient merely to allege discrimination as the result of a practice that extends over time and through a series of related acts when the 'practice' remains divisible into a set of discrete acts, each of which is individually actionable." *Id.* at *5. Judge Brown concluded that "[e]ach denial of an application for loan modification was independently actionable when it was completed." *Id.* at *6. The Court agrees.

Here, as in *Colquitt*, each of the Plaintiffs' HAMP loan modification denials is an independently actionable event. Plaintiffs filed their Complaint on October 29, 2015. The FHA has a two-year statute of limitations. 42 U.S.C. §3613(a)(1)(A). Therefore, any independently actionable event that was discovered or reasonably discoverable before October 29, 2013 is barred by the statute of limitations. Thus, the two HAMP modification denials in 2010 and 2011

are barred by the statute of limitations. Evidence relating to those denials, however, may be admissible if offered to provide relevant background information or as evidence of motive to support Plaintiffs' timely claim that they again requested and were denied a HAMP modification in 2015.

To the extent Plaintiffs intended to allege that Defendant's loan modification denials are part of an overall "pattern or practice" of Defendant, the facts alleged by Plaintiff do not support the applicability of a such a "pattern and practice" claim of continuing violations. For such a claim to be sufficiently pleaded, the relevant question is not whether Defendant engaged in a pattern of discriminating against Plaintiffs, but whether Defendant had a widespread and systemic pattern and practice of discrimination against a number of similarly situated people. *See Cherosky*, 330 F.3d at 1247 ("As the Supreme Court explained, pattern-or-practice claims cannot be based on 'sporadic discriminatory acts' but rather must be based on discriminatory conduct that is widespread throughout a company or that is a routine and regular part of the workplace." (citing *Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 336 (1977))). In their Complaint, Plaintiffs do not allege any such facts.

### 2. Loan Modification Denial "Because of" Race

Similar to its motion against Plaintiffs' ECOA claim, Defendant also moves to dismiss Plaintiffs' FHA claim because Plaintiffs fail to allege that the purportedly discriminatory loan modification denials were done by Defendant because of Plaintiffs' race. The FHA creates a private right of action for an "aggrieved person" subjected to "an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). "Aggrieved person" is defined to include any person who "claims to have been injured by a discriminatory housing practice." 42 U.S.C. § 3602(i). A "discriminatory housing practice" is any act made unlawful under 42 U.S.C. §§ 3604, 3605,

3607, or 3617. 42 U.S.C. § 3602(f). Under § 3605, it is unlawful for a person engaged in residential real estate transactions to discriminate against any person "because of race."

The Ninth Circuit has instructed that the "threshold for pleading discrimination claims under the [FHA] is low." *McGary* , 386 F.3d at 1262. In *McGary*, the Ninth Circuit reiterated that it has explicitly applied the pleading requirements stated in the Supreme Court's decision in *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002), to FHA claims. *McGary*, 386 F.3d at 1262 (citing *Gilligan*, 108 F.3d at 248-49). In *Gilligan*, the Ninth Circuit held that for claims alleging violations of the FHA there is a "powerful presumption against rejecting pleadings for failure to state a claim." 108 F.3d at 249 (quotation marks and citation omitted). Finally, the Supreme Court has recognized the FHA's "broad and inclusive compass" and has instructed courts to accord a "generous construction to the Act's complaint-filing provision." *City of Edmonds v. Oxford House, Inc.*, 514 U.S. 725, 731 (1995).

Here, Plaintiffs allege only that Defendant "discriminated against Plaintiffs by refusing to modify Plaintiffs' loan under HAMP, despite the fact that Plaintiffs qualified for a HAMP modification." Dkt. 1, ¶ 29. Plaintiffs do not, however, allege in their Complaint that they were discriminated against "because of their race." Plaintiffs clarify in their response to Defendant's motion that the "complaint and discussion between counsel make it clear that plaintiffs are alleging racial discrimination." Dkt. 16 at 5. Despite the generous FHA complaint construction standard in the Ninth Circuit, the Court finds that Plaintiffs have not sufficiently alleged that they were discriminated against "because of their race." Plaintiffs' FHA claim regarding the 2015 HAMP modification denial is dismissed with leave to replead.

**CONCLUSION**

Defendant's Motion to Dismiss for Failure to State a Claim (Dkt. 12) is GRANTED.

Plaintiffs have leave to file an amended complaint within two weeks from the date of this

Opinion and Order.

**IT IS SO ORDERED**.

DATED this 22nd day of April, 2016.

/s/ Michael H. Simon
Michael H. Simon
United States District Judge